UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF GEORGIA

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUL 08 2024

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| JAMISON STIRILING, ) | |
| JASON SAYLES, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| TK ELEVATOR CORPORATION, and ) | |
| SEDGWICK CLAIMS MANAGEMENT ) | |
| and KINGS III OF AMERICA, LLC, and ) | Case No. 1:24-CV-2555 MHC |
| RPM Living, LLC d/b/a Altitude Apartments ) | |
|     Defendants. ) | |
| ) | |
| Serve: ) | |
|     TK Elevator Corporation ) | |
|     CSC of Cobb County, Inc. ) | |
|     192 Anderson Street ) | |
|     Suite 125 ) | |
|     Marietta, GA 30060 ) | |
| ) | |
|     Kings III of America, LLC ) | |
|     751 Canyon Drive ) | |
|     Suite 100 ) | |
|     Coppell, TX 75019 ) | |
| ) | |
|     Sedgwick Claims Management ) | |
|     Services, Inc. ) | |
|     CSC Lawyer Services ) | |
|     Incorporating Company ) | |
|     2 Sun Court, Suite 400 ) | |
|     Peachtree Corners, GA 30092 ) | |
| ) | |
|     RPM Living, LLC ) | |
|     d/b/a Altitude Apartments ) | |
|     CT Corporation System ) | |
|     289 S. Culver St. ) | |
|     Lawrenceville, GA 30046 ) | |

1

## FIRST AMENDED COMPLAINT FOR DAMAGES

**COMES NOW** Jamison Stiriling, and Jason Sayles, (hereinafter "Plaintiff" or "Plaintiffs" or "Stiriling" or "Sayles"), *pro-se*, and for their First Amended Complaint for Damages state as follows:

## PARTIES

1. Plaintiff Jamison Stiriling at the time of the September 2022 incident complained of herein, and at the time of filing this action, was a citizen of the State of Missouri.

2. Plaintiff Jason Sayles at the time of the December 2023 incident complained of herein, and at the time of the filing of this action, was a citizen of the State of Missouri.

3. CF The Office Tower, LLC, d/b/a Altitude Luxury Apartments, ("Altitude") is a foreign limited liability company organized and existing under the laws of the state of Georgia and doing business in the State of Georgia.

4. Defendant RPM Living, d/b/a Altitude Apartments is a foreign limited liability organized under the laws of Texas.

5. Defendant TK Elevator Corporation ("TK") is a foreign corporation organized and existing under the laws of the state of Georgia, and doing business throughout the United States, and in the Northern District of Georgia.

6. Defendant Kings III of America, LLC ("Kings III") is a foreign limited liability company organized and existing under the laws of the state of Texas, and doing business throughout the United States and Canada, including the Northern District of Georgia.

7. Defendant Sedgwick Claims Management Services Corporation ("Sedgwick")

is a foreign corporation organized under the laws of Tennessee and doing business throughout the United States, including the Northern District of Georgia.

8. Plaintiffs' causes of action accrued at 250 Piedmont Avenue, Northeast, Atlanta, GA 30308, owned and operated by Altitude.

## JURISDICTION AND VENUE

9. This court has jurisdiction pursuant to 28 U.S.C. § 1331 for federal question jurisdiction, 42 U.S.C. § 3601 et seq. for the Fair Housing Act, and 28 U.S.C. § 1367 for supplemental jurisdiction over related state law claims.

10. This court has jurisdiction pursuant to 28 U.S.C. §1332(a)(1) in that the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, and all Defendants were diverse in citizenship to the Plaintiffs at the time of the first incident complained of herein.

## COMMON FACTUAL ALLEGATIONS – FIRST INCIDENT

11. At all times herein relevant, Defendant RPM Living, d/b/a Altitude (herein after "Altitude"), a high-rise multi-story luxury apartment building, has at least three (3) elevators in operation.

12. At all times herein relevant, Defendant TK Elevator Corporation is contractually obligated to maintain the elevators to ensure that the elevators are in good repair and safe, so as to avoid exposing the Altitude's residents, invitees and licensees to an unreasonable risk of injury and damages.

13. At all times herein relevant, Defendant Kings III was contractually obligated to

monitor Altitude's elevators to ensure that the elevators are in good repair and safe, so as to avoid exposing the Altitude's residents, invitees, and licensees to an unreasonable risk of injury and damages.

14. On or about September 9, 2022, Stiriling, a resident of the 20th floor at the Altitude boarded one of Altitude's elevators on the 20th floor of the building along with Stiriling's 4-year-old Doberman, Eli.

15. Upon entering the elevator cabin, the doors closed normally, as they should,

16. Stiriling pressed the button for the 1st floor, and immediately thereafter, the elevator doors closed.

17. After the elevator doors closed, the elevator descended normally to the 19th floor; and then, without warning or prompting, the elevator "free fell" abruptly, rapidly, and precipitously before suddenly dropping from the 18th floor to the 17th floor, thereafter coming to a lurching and thudding stop causing Stiriling and Plaintiff's dog to slam violently against the elevator cabin walls and floor.

18. Stiriling attempted to exit the elevator on the 17th floor, however, the elevator doors malfunctioned and would not open, trapping Plaintiff and "Eli" inside the elevator cabin.

19. Stiriling, panic-stricken, but composed, pressed the "Emergency Call Button" located inside the elevator's cabin.

20. After pressing the "Emergency Call Button" an operator came online, at which time Stiriling informed the operator that the elevator had fallen one or more floors, and that he (Plaintiff) and his dog were trapped inside the elevator.

21. During or shortly after Plaintiff's call to the operator, the elevator began to

move suddenly descending to the 16th floor, before stopping roughly, and thereafter, falling to the 15th floor, coming to a lurching and sudden crash causing Stiriling and "Eli" to slam violently against the elevator cabin walls, causing Stiriling's head, back and neck to strike the cabin walls violently, nearly rendering Plaintiff unconscious.

22. After what seemed to be several minutes, the doors of the elevator opened on the 15th floor and Stiriling exited the elevator with this dog.

23. Upon exiting the elevator, Stiriling immediately dialed 911 and advised the operator of the incident involving the elevator.

24. On September 9, 2022, at or about 10:54 PM, Stiriling sent Maria Woodward, Assistant Property Manager an email detailing the elevator incident.

25. On September 9, 2022, between 8:00 PM and 11:00 PM Stiriling called the Altitude emergency repair number and left a message which detailed the elevator incident.

26. Stiriling suffered serious and debilitating injuries, which have necessitated and will continue to necessitate medical treatment.

**SECOND INCIDENT**

27. On Wednesday, December 20, 2023, at or about 6:15 PM, in the process of Stiriling moving out of the building, Stiriling and Sayles boarded the elevator on the 20th floor at the Altitude Luxury Apartments located at 250 Piedmont Ave NE, Atlanta, GA 30308, with a cart carrying several packing containers containing Stiriling's personal items.

28. Stiriling pressed the 1st floor button and the doors closed normally.

29. The elevator then began to lurch up and down violently slamming both

Stiriling and Sayles violently against the walls and floor of the elevator and against the personal property on the cart.

30. The elevator then free fell and/or dropped several floors, before coming to a violent stop on an unknown floor, causing both Stiriling and Sayles to slam violently against the floor and walls of the elevator, and collide with Stiriling's personal property contained in the elevator. After coming to a violent stop, the elevator became lodged between two unknown floors, with the doors refusing to open.

31. Both Stiriling and Sayles were trapped in the elevator for approximately 45 minutes while the elevator bounced wildly and continually.

32. During such period of time Stiriling pressed the emergency call button in the elevator to request help.

33. The Kings III operator refused to call the for-emergency help, advising Stiriling help could only be called with the permission of the property manager.

34. After 30 minutes of the elevator bouncing wildly, the Plaintiffs tried to pry the doors open with no success.

35. After being trapped in the elevator for approximately 45 minutes, a CK Elevator repair technician opened the elevator doors while the elevator was trapped between floors, and both Stiriling and Sayles climbed over a 5-foot ledge to exit the elevator.

36. Stiriling and Sayles suffered serious and debilitating injuries, which have necessitated and will continue to necessitate medical treatment as a result of the first incident described herein.

37. The aforementioned incidents were caused through no fault of Plaintiffs, but

were caused solely as a result of the gross negligence, fault, carelessness, and recklessness of the Defendants Kings III, Altitude and TK Elevator, in the following particulars:

    a. creating a hazardous condition and allowing the same to exist;

    b. negligent maintenance of the elevators;

    c. failure to properly maintain, inspect, repair, and monitor the elevators;

    d. failure to implement policies and procedures to properly maintenance the elevators;

    e. failing to act as a reasonably prudent person;

    f. failing a duty owed to residents and guests of the Altitude Luxury Apartments to properly main the elevators;

    g. failing to warn patrons and the general public of known hazards and defects;

    h. failing to equip elevators with proper safety equipment, including secure grab bars to prevent falls;

    i. failing to install and properly maintain its elevators;

    j. all other acts of negligence, which will be shown at the trial of this matter.

38. Upon information and belief, Altitude, TK Elevator and Kings III of America were aware of more than 58 complaints about condition of the elevators at 250 Piedmont Avenue, Atlanta, GA 30308.

39. Upon information and belief, Altitude, TK Elevator and Kings III were aware of the dangerous condition of the elevators, but disregarded, ignored, or failed to act on such information based upon Defendants' desire to avoid the financial cost of properly maintaining, repairing or replacing the elevators.

40. Altitude and TK Elevator Corporation were aware of the defects due in

substantial measure to the design, frequency of use, age and other defects.

41. Altitude and TK Elevator Corporation are further liable for damages sustained by the Plaintiff proximately caused by Defendants' failure to issue adequate warnings of the elevator's defective condition.

### COUNT I -Violation of FHA, 42 U.S.C. § 3601 et seq.
### (Directed Against Altitude)

42. Plaintiffs reallege and incorporate by reference each and every paragraph above as though fully set forth here.

43. The Fair Housing Act ("FHA" or "the Act"), codified at 42 U.S.C. § 3601 et seq., broadly prohibits discrimination in housing-related activities based on race, color, religion, sex, handicap, familial status, or national origin.

44. The Act aims to provide fair housing throughout the United States and is a constitutionally permissible exercise of Congressional power to bar all forms of racial discrimination in the rental and sale of real property.*§ 100.5 Scope. Briley v. Barreca, 2021 U.S. Dist. LEXIS 15101.*

45. Under the FHA, 24 CFR 100.70, prohibits and makes unlawful any conduct relating to the provision of housing or **services** and facilities in connection therewith that makes housing unavailable or denies dwellings to persons protected by the FHA.

46. Under the Act, a property owner's service, maintenance, and repair of its elevators, particularly in multi-story dwellings such as the Altitude, located at 250 Piedmont Ave NE, Atlanta, GA 30308 is an essential service under the FHA.

47. Under the FHA, any aggrieved person who has sustained injury proximately

8

caused by a discriminatory housing practice may file a civil action seeking damages.

48. The Act defines an "aggrieved person" as anyone who claims to have been injured by such practices, thereby reflecting Congress's intent to confer standing broadly. *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189.

49. Remedies for discriminatory housing practices include actual and punitive damages, as well as injunctive relief and other orders deemed appropriate by the court. *Gilead Cmty. Servs. v. Town of Cromwell*, 432 F. Supp. 3d 46, *Bangerter v. Orem City Corp.*, 46 F.3d 1491.

50. Plaintiff Jamison Stiriling suffers from chronic asthma.

51. Plaintiff Jamison Stiriling suffers from chronic back and neck injury.

52. Plaintiff Jamison Stiriling resided on the 20th floor of 250 Piedmont Ave. Ne, Atlanta, GA 30308.

53. When the elevators at Defendant Altitude failed to function properly and as intended, Plaintiffs were forced to climb and descend forty (40) flights of stairs.

54. At the various times when Defendant Altitude's elevators failed to function properly, Plaintiffs were forced to choose between using the defective and unreasonably dangerous elevators or climb (and descend) the aforementioned forty (40) flights of stairs, often with groceries, guests, pets and small children of guests and family members.

55. Defendant Altitude's stairwells were frequently infested with garbage, rats and feces, and were otherwise unsanitary smelling of urine; homeless individuals were a frequent mainstay of Defendant Altitude's stairwells.

56. Moreover, there are no cameras or emergency call buttons in the stairwells.

57. The stairwell doors above the 3rd floor are locked, and should an

emergency occur, any party using the stairs must descend to the third floor to exit the stairwell, or otherwise be trapped and prevented from exiting the stairwell.

58. Once climbing 40 flights of stairs to the 20th floor, Plaintiff, and any party, would encounter a locked door and could not exit the stairwell to the 20th floor.

59. Plaintiff or any party would be forced to pound on the door hoping someone on the 20th floor would open the door and allow the Plaintiff, or any party to enter the floor.

60. The FHA requires landlords to provide reasonable accommodations to ensure that tenants with disabilities have equal opportunity to use and enjoy their dwellings. This includes maintaining accessible features such as elevators. *Moore v. Equity Residential Mgmt., LLC, 2017 U.S. Dist. LEXIS 199125*.

61. Defendant Altitude's failure to properly maintain the Elevators a 250 Piedmont Ave NE, Atlanta Ga 30308, violated the FHA.

62. Defendant Altitude's failure to maintain reasonably accessible and fully operational elevators was a violation of the FHA.

63. As a direct and proximate result of Defendant Altitude's actions, Plaintiffs sustained injury and damages.

## COUNT II – NEGLIGENCE
### (Directed Against Defendant TK Elevator Company and Altitude)

64. Plaintiffs realleges and incorporates by reference each and every paragraph above as though fully set forth here.

65. Defendant Altitude contracted with Defendant TK Elevator to maintain its elevators.

66. Defendant TK Elevator Corporation, as the company responsible for installing and maintaining Altitude's elevators in a safe condition, Defendant TK Elevator Company owed Plaintiffs, and other similarly situated individuals, a duty of reasonable care to protect Plaintiffs and other similarly individuals, to maintain its premises in a reasonably safe condition so as not to expose any person to an unreasonable risk of injury.

67. Defendant TK Elevator Corporation and Altitude negligently breached their duty to Plaintiffs by failing to maintain safe and properly operational elevators.

68. As a direct and proximate result of TK Elevator Corporation and Altitude's breach of duty, Plaintiffs sustained injury and damages.

69. Defendant Sedgwick Claims Management in correspondence to Altitude has accepted or otherwise acknowledged Defendant TK Elevator Corporation's liability for the injuries sustained by the Plaintiffs, and therefore Defendant TK Elevator's liability for the injuries sustained by the Plaintiffs is not in dispute.

## COUNT III – NEGLIGENCE
### (Directed Against Defendant Kings III of America, LLC)

70. Plaintiffs realleges and incorporates by reference each and every paragraph above as though fully set forth here.

71. Defendant Kings III, as an entity contractually bound, pursuant to a written service agreement with Defendant Altitude, owed a duty to Plaintiff to service the Defendant Altitude's elevators in a safe condition.

72. Defendant Kings III owed Plaintiffs, and other similarly situated individuals, a duty of reasonable care to protect Plaintiffs and other similarly situated individuals, to maintain and service Altitude's elevators in a workmanlike and safe manner so as not to expose any person to an unreasonable risk of injury.

73. Defendant Kings III breached its duty to Plaintiffs by failing to maintain, monitor and/or service defendant Altitude's elevators in safe manner.

74. Moreover, while trapped inside the elevator barely breathing and suffering extreme emotional upset and mental anguish, Plaintiff Stiriling pressed the EMERGENCY CALL BUTTON from inside the elevator's cabin and spoke with a Kings III representative.

75. Such Kings III representative refused to call "911" for Plaintiffs; and informed Plaintiffs that she (the operator" could call "911" ONLY if authorized to do so by Defendant Altitude's staff.

76. Defendant's actions were extreme and outrageous and justify the imposition of punitive damages.

77. As a direct and proximate result of Kings III's breach of duty, Plaintiffs sustained injury and damages.

78. As a direct and proximate result of Defendants' breaches of duty, Plaintiffs sustained injury and damages in excess of seventy-five thousand dollars ($75,000.00).

### COUNT IV – NEGLIGENT INFLICTION OF EMOTION DISTRESS
**(Directed Against the TK Elevator Corporation and Altitude)**

79. Plaintiffs realleges and incorporates by reference each and every paragraph above as though fully set forth here.

80. The general elements of a negligence action are 1) a legal duty of the defendant to protect the plaintiff from injury, 2) breach of the duty, 3) proximate cause, and 4) injury to the plaintiff.

81. Claims seeking recovery of damages for the negligent infliction of emotional

distress require proof of two additional elements: 1) that the defendant should have realized that his conduct involved an unreasonable risk of causing distress, and 2) that the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant.

82. As has been pled above, Defendant TK Elevator Corporation and Altitude knew of the many complaints regarding the defectiveness of its elevators, including two (2) separate incidents involving Plaintiff Stiriling, and single incident involving Sayles, yet chose to do nothing.

83. As such, Defendant TK Elevator Corporation and Altitude should have realized that its inaction posed an unreasonable risk of injury to Plaintiffs.

84. Both plaintiffs Stiriling and Sayles are currently or have been under a doctor's care and have been diagnosed with physical and mental trauma caused by their Altitude elevator-related injuries and traumas.

85. As a direct and proximate result of Defendant TK Elevator Corporation and Altitude's breach of duty, the Plaintiffs sustained injury and damages.

## COUNT V – PUNITIVE DAMAGES
**(Directed Against TK Elevator Corporation and Altitude)**

86. Plaintiffs realleges and incorporates by reference each and every paragraph above as though fully set forth here.

87. Punitive damages may be awarded under "when a defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the protected rights of others."

88. Punitive damages punish a defendant for outrageous, intentional, or malicious conduct and deter similar extreme conduct in the future.

13

89. It is a question of fact whether a defendant's conduct was motivated by an evil motive or involves reckless indifference to the protected rights of others.

90. Defendant TK Elevator Corporation and Altitude were made aware of numerous complaints involving personal injuries sustained by Altitude residents, invitees and licensees, but has done nothing to ameliorate the litany of problems with its elevators.

91. Defendant TK Elevator Corporation and Altitude knew, or had reason to know, of the complaints of others and Plaintiffs yet chose to take no remedial action.

92. Defendant TK Corporation and Altitude's actions, or more appropriately, inaction, should shock the conscience of reasonably prudent persons and are extreme and outrageous and should not be tolerated in a civilized society.

93. As a direct and proximate result of Defendants TK Elevator Corporation and Altitude's extreme and outrageous behavior, Plaintiffs have sustained injury and damages, including, but not limited to extreme mental anguish and emotional upset, and Post Traumatic Stress Disorder ("PTSD") for which Plaintiffs are treating with a licensed medical care professional.

### COUNT VI – VEXATIOUS REFUSAL TO PAY A COVERED CLAIM
**(Directed Against Sedgwick Claims Management Services, Inc.)**

94. Plaintiffs realleges and incorporates by reference each and every paragraph above as though fully set forth here.

95. Defendant Sedgwick is the claims administrator for Defendant TK Elevator.

96. Plaintiffs have demand for payment (or denial) of Plaintiffs' claims in January 04, 2024.

97. On January 8, 2024, Defendant TK Elevator tendered defense of Plaintiffs' claims to Altitude.

98. Altitude refused tender, by written letter to Sedgwick.

99. Defendant Sedgwick has refused to pay or deny Plaintiffs' claims despite having received Altitude's refusal of tender.

100.  Defendant Sedgwick's failure to pay or deny Plaintiffs' claims is vexatious and without justification or excuse.

101.  As a direct and proximate result of Defendant Sedgwick's vexatious refusal to pay or deny Plaintiffs' claims, Plaintiff sustained injury and damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Jamison Stiriling and Jason Sayles prays for judgment against defendants jointly and severally as follows:

Plaintiffs pray for reimbursement for special damages, including, but not limited to, past and present and future medical expenses, past present and future loss of wages, and past and present, and future loss of wage-earning capacity.

Plaintiffs also pray for general damages for past, present and future physical pain and suffering, mental anguish, disability, loss of enjoyment of life, and inconvenience and any other compensable items of intangible damage allowed by law, in excess of Seventy-Five Thousand Dollars ($75,000.00) in actual damages, the proof of which shall be adduced through discovery:

FURTHER, Plaintiffs Jamison Stiriling and Jason Sayles pray for 10 million dollars in punitive damages against RPM Living d/b/a Altitude;

FURTHER, Plaintiffs Jamison Stiriling and Jason Sayles pray for $3 million dollars in punitive damages against Defendant TK Elevator Corporation;

FURTHER, Plaintiffs Jamison Stiriling and Jason Sayles pray for $250,000.00 dollars in punitive damages against Kings III of America, LLC;

FURTHER, Plaintiffs Jamison Stiriling and Jason Sayles pray for additional damages against Sedgwick Claims Management under the Georgia Vexatious Refusal Statute (**§ 33-5-58**);

FURTHER, Plaintiffs pray for judgment against TK Elevator and the Altitude for an amount that is fair and reasonable in excess of $75,000.00; and

FURTHER, Plaintiffs Jamison Stiriling and Jason Sayles pray for $250,000.00 dollars in punitive damages against Sedgwick Claims Management Corporation, and for any such further relive this Court deems just and proper, together with costs, fees, and prejudgment and post judgment interest.

**PLAINTIFFS DEMANDS TRIAL BY JURY.**

Respectfully submitted,

JAMISON STIRILING.

By: /s/ [signature]
2221 Peachtree Road NE
D467
Atlanta, GA 30309
(314) 791-3113
jamisonstiriling@gmail.com

JASON SAYLES

By: /s/ [signature]
7238 St. Andrews Place
St. Louis, Missouri 63121
Jason_sayles@icloud.com